ELLA R. KELLOGG, APPELLANT, v. NATIONAL PROTECTIVE INSURANCE COMPANY, A CORPORATION, RESPONDENT.—155 S. W. (2d) 512.

Kansas City Court of Appeals. October 6, 1941.

*Louis A. Laughlin* for appellant.

*James P. Aylward, George V. Aylward* and *Terence M. O'Brien* for respondent.

CAVE, J.—Appellant sued in the Jackson County Circuit Court on two policies of accident and life insurance issued by respondent to her husband, who, during the life of both policies, was killed in an automobile accident. In one, the appellant was the beneficiary, and the amount claimed therein in the suit below was $1500. The other was payable to the estate of the insured, and the amount claimed therein was $500. In the trial below, there was no dispute about the policies being in effect at the date of the death of insured and no dispute about proof of death being made.

The appellant and her husband resided in the State of Kansas at all times here involved, and he was killed in an automobile accident in that State on April 24, 1938. The probate court in Kansas ordered his executrix to assign the latter policy to her as her statutory widow's allowance, which was done, and she sues on both policies in her own name.

The respondent is a Missouri corporation, with its chief office in Kansas City, Missouri. The deceased ordered the policies, they were sent to him from the home office, and he paid the premiums thereon, all by mail.

The appellant contends the policies are to be construed and enforced under the laws of Kansas, and she pleaded in her petition certain Kansas statutes and decisions which forbid provisions in such policies reducing the liability below the face amount unless printed in bold type of greater prominence than the rest of the text; and made such policies valid as if the forbidden provisions did not appear therein. Other allegations in the petition set out certain Kansas statutes and decisions under which appellant claimed respondent had transacted business in the State of Kansas in issuing, delivering and collecting premiums on said policies, and in adjusting the same.

The respondent's answer denied it had transacted this or any other business in the State of Kansas, and pleaded certain clauses of the respective policies, reducing liability below the face amount after the insured had reached certain specified ages. These were not printed in large type, as required by the Kansas statute. The deceased had passed those ages when he died. Respondent admitted liability for the reduced amounts and tendered such amounts into court. The appellant did not file a reply. The case was tried to the court without a jury; respondent's theory was adopted, and judgment went for respondent in view of said tenders.

At the close of the evidence, appellant had requested certain declarations of law applying the aforesaid Kansas statutes to the case and

stating that any contrary course would violate Article IV, Section I of the Constitution of the United States, by denying full faith and credit to the statutes and decisions of a sister State. These declarations were refused. Motion for new trial was overruled and appellant filed application and prayed for appeal to the Supreme Court of Missouri because of the constitutional question involved, and the appeal was so granted. That court held that there was no constitutional question involved, and certified the cause to this court.

The case being stripped of any constitutional question leaves but one question for decision, and that is, were these two contracts of insurance Missouri contracts or Kansas contracts? The appellant concedes that if the Kansas statutes, to be later referred to, do not apply, then she is not entitled to recover anything other than the amount tendered into court. The policy sued on in the first count was issued May 3, 1932, for $1000, and by the terms of the policy it increased in value $100 per year for five years, so that at the death of the insured, it had a face value of $1500. The second policy was for $500 and was issued April 1, 1938. The manner of purchasing the policies was the same in each case. Respondent advertised in the Kansas City Star, a newspaper published in Kansas City, Missouri, soliciting applications for insurance. The insured saw the advertisement at his home in Portis, Kansas, and wrote a letter of inquiry to respondent at its office in Kansas City, Missouri. In reply, respondent sent each policy to insured for inspection. The policies are not dated, and provide that they shall become effective only from the date the final premium receipt is dated and signed at the home office. After inspecting the policies, when they were received through the mail, the insured sent the amount of the premium to the respondent by mail and received a receipt therefor by mail, which receipt had been signed at its office.

Insured was seventy-seven years of age at the time of his death. The first policy, among other things, provided that after the insured had reached or passed his seventy-fifth birthday, the benefits payable would be one-fourth of the face of the policy. The second policy provided that after the insured's seventieth birthday, benefits would be one-third of the face. These reducing provisions are printed in the same type as the text of the policy, and the Kansas statute, which is here involved, provides that the provisions of a policy reducing the amount to be paid by reason of the circumstances under which the loss is incurred, to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold face type, and with greater prominence than any other provisions of the text of the policy. Thereby arises the controversy in this lawsuit. Appellant contends that both policies are Kansas contracts and the Kansas statute applies, while respondent asserts that both policies are Missouri contracts and must be construed according to the Missouri law.

Appellant argues in her brief that because the Kansas statute requiring the printing of exceptions in insurance policies in bold face type applies to all policies delivered in the State, regardless of the place of contract, it is a proper exercise of police power and overrides any contract provision, and cites the cases of Dolan v. Mutual Reserve Fund Life Association, 173 Mass. 197, and Harwood v. Security Mutual Life Insurance Company, 263 Mass. 341. An examination of the opinion in those cases shows they have no application here. In the Dolan case, *supra,* it appears that the insurance company was doing business in Massachusetts, and the contract of insurance was made through its agent in that State and delivered and paid for in the State of Massachusetts, and the only fact relied on by the insurance company was the provision on the back of the policy, as follows:

"This contract shall be governed by and construed only according to the laws of the State under which the corporation is organized."

That presents an entirely different question from the one now under consideration.

In the Harwood case, *supra,* the court was there discussing the question of a demurrer to a petition, which, among other things, alleged that the policies were issued by the defendant to plaintiff in the Commonwealth of Massachusetts. We do not believe the two Massachusetts cases cited throw any light on the question now confronting us.

As we have said above, the vital question in this case, and the theory upon which it was tried and submitted in the lower court is, under the facts in the record, are these two policies Missouri contracts or Kansas contracts? If they are Missouri contracts, then their validity and interpretation must be determined by the law of Missouri, where the contracts were made. [Liebing v. Mutual Life Insurance Company, 276 Mo. 118; Ruhe v. Buck, 124 Mo. 178.] The pertinent facts on this point are that, as above mentioned, the home office of the respondent was in Kansas City, Missouri. It did not maintain agents in the State of Kansas. It advertised its policies through newspapers. The insured, who lived in Kansas, saw such an advertisement and wrote to the home office for a policy. The policy was sent to him for inspection, but by its very provisions, it was not dated and was not to become effective until the premium had been received at the home office and an official premium receipt, "which shall put this policy in force, is dated and signed by a duly authorized representative at the office of the company."

The entire transaction between the defendant and the insured was by mail. It appears from the face of the policy that the final act which would put the policy in effect was the issuance of the official premium receipt which must be dated and signed by a duly authorized representative at the home office of the company. The sending of the policy to the insured through the mail for examination did not complete

the contract. The insured tendering the premium through the mail did not complete the contract. That was not completed until the premium was accepted and the official receipt issued, which was done in Missouri. Therefore, it would appear clear under the facts here that these were Missouri contracts. If so, all the cases hold the Missouri law applies. [Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S. W. (2d) 1036, and cases there cited.]

In the case of Fields v. Equitable Life Assurance Society, 118 S. W. (2d) 521, this court held the contract of insurance there involved was a New York state contract. Yet the facts in that case were not as favorable to the defendant as in this case. The appellant here argues that the decision of the court in the Fields case, *supra,* is not good law and should not be followed. We have re-examined the opinion in that case and see no reason to criticize it. Certainly, under the facts in this case, we have no doubt that the contracts here involved are Missouri contracts, and must be construed accordingly. In her reply brief, appellant admits that when these policies were mailed by respondent to the insured they were not binding, but were mere proposals to enter into a contract. She further states that ''when the receipt was signed in Missouri it vitalized the proposal into a binding contract.'' It would appear to follow that the last act done to make a binding contract was done in Missouri and therefore the contract must be construed and governed by the laws of Missouri. [Pickett v. Equitable Life Assurance Society, 27 S. W. (2d) 452; Toon v. Evans Coffee Company, 103 S. W. (2d) 535.] There being no statute in this State requiring the provisions of the policy as here involved to be printed in bold type, it must be enforced as written.

The appellant calls to our attention the cases of Cravens v. New York Life Insurance Co., 148 Mo. 583; Lange v. Insurance Co., 254 Mo. 488; and Head v. Insurance Company, 241 Mo. 403. But in those cases, the last act necessary to put the policy in force was the delivery of the policy and the court accordingly held that the law of the place where the policy was delivered governed. That is not the situation we are here deciding. Appellant also cites a number of other cases which deal with the police power of a State and its power to pass statutes regulating the transaction of insurance business in that State. We have no quarrel with the general principles of law announced in such cases, but none of them change or seek to change the well-recognized principle of law that the contract must be construed and enforced in accordance with the laws of the State of its making, and that the last and final act which makes the contract binding and gives it vitality determines the State in which the contract was made.

We conclude that, under the facts in this case, the judgment of the trial court was correct. Therefore, it is ordered that such judgment be affirmed. All concur.