Ivan H. HARTZLER, et al., Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE Co., Appellant.

No. WD 48495.

Missouri Court of Appeals, Western District.

Aug. 9, 1994.

Patrick M. Reidy, Kansas City, for appellant.

Timothy Brownlee, Kansas City, for respondents.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

HANNA, Presiding Judge.

Ivan and Belinda Hartzler brought suit to recover underinsured motorist benefits in each of two policies issued to them by American Family Mutual Insurance Company (American Family). The issue on appeal is whether the anti-stacking provisions of the Hartzlers' underinsured motorist benefits should be enforced.

Prior to trial, both parties filed motions for partial summary judgment to determine whether Missouri or Kansas law should apply to the insurance contracts. The trial court determined that Missouri law applied and disallowed the provisions in the insurance policies which prohibited the stacking of the

insurance provisions. The case proceeded to trial and the jury awarded Mrs. Hartzler $100,000 in damages for her personal injuries. On appeal, American Family contends that Kansas law should apply and the anti-stacking provisions in the policies should be enforced.

In 1983, Mr. Hartzler purchased an automobile insurance policy from American Family. In 1985, Mr. Hartzler purchased a second policy to insure another car he owned. Both policies contain provisions for underinsured motorist protection with coverage limits in the amount of $50,000 per person and $100,000 per accident. Mr. Hartzler was the named insured under both policies. The Hartzlers were residents of Kansas at the time the policies were issued. Although the policies were purchased in Missouri, each policy was denominated "Kansas Family Car Policy" and contained certain provisions mandated by Kansas law. Both of the vehicles insured under the policies were registered and garaged in Kansas.

On August 25, 1986, Mrs. Hartzler was involved in an automobile accident at the intersection of 63rd Street and State Line Road in Kansas City, Missouri. She and her four minor children were injured. All of the parties involved in the accident, including the driver of the other vehicle, Kevin Morgan, were Kansas residents. Mr. Morgan's insurance company, also American Family, paid the limits of liability pursuant to his policy. The Hartzlers subsequently filed an action against American Family to recover underinsured motorist benefits provided by each of their two policies.

Prior to trial, the court considered cross-motions for partial summary judgment and determined that the interpretation of the insurance contracts would be governed by Missouri law. The trial court held that the anti-stacking provisions contained in the policies were, therefore, invalid. The claims of the minor children were settled and the cause proceeded to trial on Mrs. Hartzler's personal injury claim and Mr. Hartzler's loss of consortium claim. The jury returned a verdict in favor of Mrs. Hartzler and against Mr. Hartzler. Mrs. Hartzler's damages were assessed at $100,000. The court entered judgment on the verdict and American Family appealed.

American Family presents two points on appeal. It first contends that the trial court erred in determining that the insurance policies should be governed by Missouri law. Rather, it argues, the court should apply Kansas law,[1] limiting coverage to $50,000. Because the first point is dispositive, we will not address American Family's second point.

■ Our scope of review is governed by *Grassham v. Farm Bureau Town & Country Ins. Co.*, 684 S.W.2d 892, 895 (Mo.App.1984), in that the judgment is to be affirmed unless the trial court erroneously declared or applied the law. Further, it is the court's duty to interpret and enforce the contract as written. *Brugioni v. Maryland Casualty Co.*, 382 S.W.2d 707, 710 (Mo.1964).

The Hartzlers argue that the most important factor to be considered by the court in determining this choice of law question is the place of contracting. In support of this claim, the Hartzlers cite *Brumbaugh v. Travelers Indem. Co.*, 396 S.W.2d 740, 741 (Mo.App.1965), in which the court determined that the law of the state where the insurance contract was entered into controlled the substantive rights of the parties. The Hartzlers further claim that because the "last act done to make the contracts effective" occurred in Missouri, the policies must be construed and governed by Missouri law, citing *Kellogg v. National Protective Ins. Co.*, 236 Mo.App. 837, 155 S.W.2d 512, 514 (1941).

The cases cited by the Hartzlers in support of their argument were decided prior to

---

1. Kansas law prohibits the stacking of uninsured and underinsured motorist coverage. K.S.A. 40–284(d) (1986); *Markway v. State Farm Mut. Auto. Ins. Co.*, 799 S.W.2d 146, 148 (Mo.App.1990).

Missouri public policy as expressed in § 379.-203, RSMo Supp.1993, and *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538, 542 (Mo. banc 1976), prohibits anti-stacking provisions with respect to uninsured motorist coverage. The anti-stacking policy does not carry over to underinsured motorist coverage except when the insurance company treats the two as the same. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 212 (Mo. banc 1992). Our concern here is with underinsured motorist coverage.

Missouri's adoption of the "significant relationship" test. The Hartzlers ignore the significant relationship test as adopted in the originating case of *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969) (applying the test in a tort case). While it is true that the place of contracting is an important consideration, it is not, standing alone, a controlling factor. *See Restatement (Second) of Conflict of Laws* § 188 cmt. e (1971).

In determining choice of law issues insofar as they relate to contracts, Missouri has adopted §§ 188 and 193 of the *Restatement (Second) of Conflict of Laws* (1971). *Crown Ctr. Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348, 358 (Mo. App.1986). This court held that if it had not already adopted them by implication, "this court now adopts §§ 188 and 193 of the *Restatement (Second) of Conflict of Laws* in casualty insurance cases." *Id.* We examine both of these sections in order to determine whether the state law of Kansas or Missouri should apply to the facts of this case.

Section 193 states:

§ 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined *by the local law of the state which the parties understood was to be the principal location of the insured risk* during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Restatement* § 193. (emphasis added).

The court in *Crown Ctr.* observed that under § 193, the applicable law should be the law of the state which the parties contemplated as the principal location of the insured risk. *Crown Ctr.*, 716 S.W.2d at 358; *see also, Restatement* § 193 cmt. b. When the insured risk can be located in one particular state, at least principally, the location of the insured risk will be given greater weight than any other single contact in determining the state of applicable law. *Restatement* § 193 cmt. b.

The Hartzlers purchased insurance policies that were denominated "Kansas Family Car Policy," and they contained various preprinted provisions unique to Kansas statutory requirements. Both of the vehicles were garaged in Kansas, and the term of the policies was for six months.

Comment b to § 193 describes the principal location of the insured risk as "the state where it will be during at least the major portion of the insurance period" and states that in the case of an automobile liability policy, the parties will usually know where the vehicle will be garaged at least during most of the period in question. *Id.* The comment observes that in the great majority of instances the contract of insurance will be relatively brief (in this case, six months), thereby making it "possible to predict with fair accuracy where the risk will be located, or at least principally located, during the life of the policy." *Id.* The insured risk's principal location, if it can be determined to be a certain state, is the most important contact to be considered in the choice of the applicable law. *Id.*

The obvious rationale for this rule is that the principal location of the risk has the ultimate bearing upon the nature and extent of the risk and constitutes a significant factor upon which the terms and conditions of the policy will depend. *Restatement* § 193 cmt. c. It is common knowledge that premiums for an insurance policy are determined, in large part, according to where the vehicle is garaged. *Id.*

The policies at issue furnish a clear showing of the parties' intention as to the location of the insured risk. Many terms and conditions of these policies make express reference to Kansas statutes. For example, the preprinted policies grant the parties the right to arbitrate underinsured and uninsured coverage under K.S.A. 5–201 through 5–213. Additionally, the terms of cancellation include those "otherwise permitted by the laws of Kansas," and each policy defines a motor vehicle under the uninsured and the personal injury protection coverages as "a self-propelled vehicle of a kind required to be registered in Kansas."

These factors cause us to conclude that the parties, at the time of the purchase of the policies, understood that the principal location of the insured risk during the term of the policy was the state of Kansas. Section 193, therefore, directs the application of Kansas law.

Section 193 is the applicable rule unless another state has a more significant relationship to the parties than does the "principal location" state. The Hartzlers argue that Missouri has the more significant relationship to the parties because the contract was entered into in this state and the accident occurred here. Certainly, in the course of living and working close to a line that divides two states, the insured vehicles will be expected to travel across the state line with some regularity. This would be true of an individual whose automobile was garaged in Prairie Village, Kansas, which is located a few miles from the state line between Kansas and Missouri. Because the automobile moves easily from state to state, comment a to § 193 advises that if the principal location of the insured risk is not readily apparent, the law governing insurance contracts must be determined in accordance with the principles set forth in § 188. *Restatement* § 193 cmt. a. While we believe that § 193 controls this situation, we nevertheless examine § 188, which provides as follows:

> (2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (1) the place of the contracting,
>>
>> (2) the place of negotiation of the contract,
>>
>> (3) the place of performance,
>>
>> (4) the location of the subject matter of the contract, and
>>
>> (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Restatement* § 188(2). These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

In *Protective Casualty Ins. Co. v. Cook*, 734 S.W.2d 898 (Mo.App.1987), the Eastern District addressed the development of choice of law analysis in Missouri, noting that:

> [P]rior to modern developments in conflict of laws, the Missouri decisions adhered to the general principle that the law of the state in which a contract was made or entered into governed the contract, its nature, validity, obligation, interpretation, legal effect and all matters of substance involved therein. But with the seminal decision in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969) adopting the "most significant relationship" test ... Missouri has adopted a more flexible approach.

*Cook*, 734 S.W.2d at 905 (citations omitted). The court also pointed out that Missouri applies the criteria set forth in the *Restatement* to both tort and contract actions. *Id.*

In support of its argument, American Family cites *Markway v. State Farm Mut. Auto. Ins. Co.*, 799 S.W.2d 146 (Mo.App. 1990). The facts recited by this court in *Markway* are similar to those in the case at bar. In *Markway*, the plaintiffs brought suit against their insurance company (State Farm) to compel payment of uninsured motorist benefits in each of four policies issued to them by State Farm for injuries sustained by Mr. Markway after being struck by an uninsured motorist. Each policy contained an uninsured motorist provision which provided payment up to $50,000 for injuries caused by an uninsured motorist. The policies also contained provisions which prohibited the stacking of uninsured motorist benefits. The plaintiffs claimed that Missouri law, rather than Kansas law, should apply and that the anti-stacking provisions in each of the policies should not be enforced. *Id.* at 147. The plaintiffs were Kansas residents at the time of contracting as well as at the time of the accident. *Id.* The insured vehicles were licensed and titled in Kansas and the policies were issued in Kansas. *Id.* at 149. The plaintiffs argued that Missouri law should apply because of the following Missouri contacts: the accident occurred in Missouri, one of the insured vehicles was garaged in Missouri at least forty hours per week, the insurance contract renewal notices

were posted in Missouri, the premium payments were mailed to and deposited in Missouri, and the insurance company's office address was designated on the policies as Columbia, Missouri. *Id.*

In determining that Kansas law should apply to the insurance contracts, this court emphasized the fact that each of the four policies contained anti-stacking provisions that were mandated by Kansas law pursuant to K.S.A. 40–284(d). *Id.* The court noted that "[c]ontractual obligations imposed by law are not changed whenever a state line is crossed," and held that the anti-stacking provisions were valid. *Id.* at 149–50.

The same issue was before this court in *South v. American Interinsurance Exch.*, 743 S.W.2d 421 (Mo.App.1987). In *South*, the parents of a daughter killed in an accident involving an uninsured motorist brought suit against insurers to compel payment of uninsured motorist benefits in each of four policies. Each of the policies contained anti-stacking provisions. At the time, Iowa law prohibited the stacking of uninsured motorist coverage. Although the accident occurred in Missouri, all of the insured were Iowa residents at the time the policies were issued and the insured vehicles were principally garaged in Iowa. *Id.* at 422. The court held that Iowa rather than Missouri law applied, and enforced the anti-stacking provisions in the policies. *Id.* at 422–23.

In *Cook*, 734 S.W.2d at 905, the Eastern District applied the "most significant relationship" test in determining whether Missouri law should be applied to an insurance contract made in Florida. The court found that Missouri had the most significant relationship to the transaction, noting that "the fact that all of the individuals involved in the accident were Missouri residents" was a significant factor. *Id.* at 906.

The facts in *Adkins v. Sperry*, 190 W.Va. 120, 437 S.E.2d 284 (1993), are virtually identical to those in the case at bar. In *Adkins*, the West Virginia Supreme Court applied the significant contacts approach to determine whether Ohio law, rather than West Virginia law, should apply to an automobile insurance policy issued in West Virginia. The plaintiffs in that case argued that West Virginia law

should apply because the policy was issued in West Virginia and the insured vehicle was driven to West Virginia on a daily basis. *Id.* at 288. The court held that Ohio law applied, focusing on the fact that the plaintiffs were residents of Ohio, the insured vehicle was registered and licensed in Ohio, and the actual policy was an Ohio insurance policy. *Id.* The court also noted that "[w]hether or not [the plaintiff] drove the car in West Virginia [was] not the controlling issue." *Id.*

■ In this case, the Hartzlers argue their Missouri contacts, which include the policy being issued in Missouri with premium payments being mailed to Missouri, the insurance agent has an office in Missouri, the accident occurred in Missouri, and the insured vehicle was located in Missouri forty hours per week. American Family emphasizes the significant Kansas contacts as follows. The insured vehicles were registered and principally garaged in Kansas. The actual policies are clearly designated "KANSAS FAMILY CAR POLICY" and contain several references to Kansas. The policies cover motor vehicles registered in Kansas. They also contain provisions that are mandated by Kansas law, i.e., the anti-stacking provisions which comply with K.S.A. 40–284, and a "Kansas Personal Injury Protection (PIP) Endorsement" which provides for personal injury coverage and specifies that benefits will be paid in accordance with Kansas law. Additionally, the Hartzlers were residents of Kansas at the time the policies were purchased, and all of the parties involved in the accident were Kansas residents.

In weighing the contacts with each state, it is evident that Kansas was the parties' expectation of the principal location of the insured risk under the § 193 guidelines and that Kansas had the "more significant relationship" to the parties and the transaction under § 188. The facts discussed above clarify the reasonable expectations of the parties at the time of contracting—they had negotiated a Kansas automobile insurance contract to insure their Kansas registered vehicles. Therefore, we conclude that Kansas law should govern the interpretation of the insurance policies in this case. Since Kansas law applies, the anti-stacking provisions con-

tained in each of the two policies are valid and enforceable. Accordingly, the judgment of the trial court is reversed and the cause is remanded.

All Concur.