No. 77,910

SAFECO INSURANCE COMPANY OF AMERICA, *Appellant,* v. TERRY V. ALLEN, LOU ACCURSO, and ROBERT SCHROEDER, *Appellees.*

(941 P.2d 1365)

Opinion filed July 11, 1997.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Chad K. Gillam,* of the same firm, was with him on the briefs for appellant.

*Charles H. McKenzie,* of The Accurso Law Firm, P.C., of Kansas City, Missouri, argued the cause, and *Frederick J. Ernst,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an action by Safeco Insurance Company of America (Safeco) against its insured, Terry Allen, and Lou Accurso, the attorney who represented Allen in a personal injury claim, and the attorney's assistant, Robert Schroeder, alleging that they failed to protect Safeco's subrogation interest. Allen was injured in an automobile accident that occurred in Kansas. The district court dismissed the claims against Allen and Schroeder for lack of personal jurisdiction. The district court granted summary judgment to Accurso on the first $2,000 of medical expenses paid and granted summary judgment to Safeco on the remaining $925 (rounded up to the next dollar), subject to any attorney fees to which Accurso may be entitled. Safeco appealed to the Court of

Appeals. The case was transferred to this court on Safeco's motion, pursuant to K.S.A. 20-3017.

Material facts are not in dispute. The following facts are taken from the uncontroverted facts on which the district court based its rulings.

In September 1991, an automobile accident occurred in Prairie Village, Kansas, involving a vehicle operated by Allen and a vehicle operated by Ruth Head. Allen, a Missouri resident, was insured by Safeco in the state of Missouri. Allen made claim on Safeco under his insurance policy for medical expenses incurred as a result of the accident. Safeco paid Allen $2,924.60.

Allen made a tort claim against Head, and he was represented in his claim by the law firm of Accurso, Stein, McCaskill and Smith. The firm was located in Jackson County, Missouri. Schroeder was a legal assistant employed by that law firm. Acting on behalf of the firm, Schroeder agreed in a telephone conversation with a Safeco adjuster in St. Louis, Missouri, to protect Safeco's personal injury protection (PIP) lien in the event Allen recovered in tort against Head. At the time of the conversation, Schroeder was under the impression that Allen was a Kansas resident.

In December 1991, Allen settled all claims against Head. Safeco has not been reimbursed for the money it paid to Allen.

In addition to the facts put forward by the parties, the district court found that the Safeco policy provided $2,000 of medical payment coverage to Allen.

The district court dismissed Safeco's claims against Allen and Schroeder for lack of personal jurisdiction. Although Safeco cited the section of the long arm statute dealing with the commission of a tortious act in Kansas, the insurer made no factual allegations to support the exercise of jurisdiction on that basis. The district court also stated that there were no allegations even tending to show that the nonresident defendants purposely availed themselves of the privilege-conducting activities in Kansas from which Safeco's claims against them arose.

The district court concluded that *State Farm Mut. Auto. Ins. Co. v. Baker*, 14 Kan. App. 2d 641, 797 P.2d 168, *rev. denied* 247 Kan. 705 (1990), was controlling. On the basis of *Baker*, the district court

granted summary judgment to Accurso up to the limit of Safeco's liability under the medical payment provision of its policy, $2,000.

Finally, the district court granted summary judgment in favor of Safeco on the $925 of medical expenses paid in excess of the medical payments coverage. The court reasoned that Safeco was entitled to judgment on its claims against Accurso for breach of contract and conversion. The court cited in particular a written confirmation of the assurance, which first had been given by Schroeder in a telephone conversation, that Safeco's interest would be protected. In this regard, the district court stated: "Safeco has not suggested that the written confirmation from Schroeder as to the terms of the agreement between Accurso and Safeco is inaccurate in its attorney fee provision. However, that issue was not squarely presented by the summary judgment motions." The court further stated:

"Safeco's recovery is subject to any agreement made by Safeco to pay an attorney fee to Accurso on that recovery. If Accurso is entitled to an attorney fee of one-third, then Safeco would be entitled to judgment for two-thirds of the $924.60, which amount was clearly paid as PIP benefits, which are subject to Safeco's lien."

Safeco appealed from the parts of the judgment adverse to it. Accurso did not.

We first consider if Safeco had any right to recover the first $2,000 of medical payments to Allen. The district court concluded that Safeco did not, relying on the holding in *Baker*. Safeco suggests that this court should overturn *Baker*. Baker, a Missouri resident, was insured by State Farm under a policy issued in Missouri that provided medical payment coverage up to $1,000 not subject to subrogation by the insurer. Baker was involved in an automobile accident in Kansas. State Farm reimbursed him $511 for medical payments. State Farm alleged that the settlement of Baker's tort claim against the other driver was subject to subrogation. The Court of Appeals decided otherwise.

First, the Court of Appeals decided that Missouri law rather than Kansas law was applicable in construing the insurance policy "and determining the benefits afforded and paid, including those mandated under [the Kansas Automobile Injury Reparations Act]

KAIRA." 14 Kan. App. 2d at 645. The Court of Appeals parenthetically noted that the rules of construction applicable to insurance policies are virtually identical in Missouri and Kansas. Then, the Court of Appeals turned to the insurance policy:

"[T]he policy explicitly provides first-party medical payments coverage to the insured wholly apart from liability coverage. We also note that the policy states the medical payment coverage applies '[i]n the United States of America.' It is difficult to imagine any clearer language stating the parties' intent that the first-party medical payments coverage would apply out of state as well as within state. The insured, Baker, is entitled under the terms of the policy to the explicitly bargained for coverage and, in the event of an out-of-state accident [and exhaustion of medical payments coverage under the policy], replacement of that explicit coverage by coverage required under the laws of the sister state. There is no provision within the policy, nor under KAIRA, that would even remotely suggest Kansas personal injury protection benefits, statutorily mandated as part and parcel of liability coverage under a no-fault scheme, require elimination of first-party medical benefits insurance explicitly bargained for and provided in the policy. We hold that, under the circumstances of this litigation, the first $1,000 in medical benefits paid to or on behalf of Baker were under the first-party medical benefits, not under Kansas personal injury protection benefits, and not subject to subrogation." 14 Kan. App. 2d at 646.

Hence, the district court's entry of summary judgment in favor of Baker and against State Farm was affirmed. 14 Kan. App. 2d at 647.

With the exception that Allen's medical expenses exceeded his policy's expressed coverage, the facts in the present case match those in *Baker*. Safeco reimbursed Allen for his medical expenses. If the reimbursement was a medical expenses payment under the policy that Allen purchased, Safeco is not entitled to subrogation of recovery Allen received from Head up to the amount of the medical expenses coverage under the Missouri policy. If the reimbursement was a Kansas statutory PIP benefit, Safeco is entitled to subrogation. K.S.A. 40-3113a(b) provides, in part: "In the event of recovery from such tortfeasor by the injured person . . . by judgment, settlement or otherwise, the insurer . . . shall be subrogated to the extent of . . . personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery."

Safeco urges this court to overturn the decision in *Baker* "because the conclusion reached by the [Court of Appeals] is in error insofar as the Court failed to consider the express language of the statute, K.S.A. 40-3110(a)." K.S.A. 40-3110(a) provides, in part:

"[P]ersonal injury protection benefits due from an insurer . . . under this act shall be primary and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy issued in compliance with this act."

Safeco's reading of this provision is focused strictly on the phrase "shall be primary." Its position is that this statute "mandates that PIP is primary." Safeco does not take into consideration that the statute does not state that PIP benefits shall be primary but rather that PIP benefits "due from an insurer . . . under this act" shall be primary. The initial inquiry, therefore, must be whether PIP benefits are due under KAIRA. The Court of Appeals concluded that PIP benefits were not due to Baker under KAIRA because his medical expenses were covered by the first-party medical benefits of his Missouri insurance policy.

Safeco further argues that *Baker* does not control because the policy it issued to Allen expressly provides that the first-party medical payments coverage is excess coverage. The "Medical Expenses Section" of the policy contains the following provision:

"**Other Insurance**. If there is other medical, hospital benefits insurance (other than Medicare), Health Maintenance Organization or Preferred Provider Organization benefits available from any source against a loss covered by the **Medical Expenses Section** of this policy, this insurance shall be excess insurance over any other valid and collectible medical, hospital benefits insurance, Health Maintenance Organization or Preferred Provider Organization benefits."

This provision is akin to the "other insurance clause" of the Kansas statute. Each specifies what type of coverage its benefits will be relative to other applicable coverage. Corresponding to the statutory inquiry, therefore, the first inquiry with regard to the policy's medical benefits is with regard to the applicability of other coverage. If, as the Court of Appeals concluded in *Baker*, the PIP benefits understudy rather than take the place of medical benefits under a Missouri policy, the only applicable coverage up to the limit of liability under the policy is under the policy.

In its memorandum decision, the district court stated that Safeco would have a subrogation right under Kansas law if the payment was a PIP benefit, but that "Missouri law would prohibit subrogation by the insurance carrier." Safeco "agrees that an insurance carrier cannot subrogate for medical payments benefits under a Missouri contract of insurance." With regard to the amount above $2,000 paid by Safeco to Allen, the district court's decision favored Safeco in allowing subrogation rights as provided by Kansas statute. Since appellees did not cross-appeal from that portion of the judgment, it is not properly before us on appeal.

As to *Baker* as well as on the subject of subrogation, appellees introduce their view of the Court of Appeals' opinion as follows: "The court in *Baker merely* held that a Missouri contract of insurance should be construed under Missouri law and that Missouri law precluded an insurer from asserting or enforcing any subrogation rights based upon the payment of medical benefits." (Emphasis added.) Appellees do not directly respond to Safeco's suggestion that this court should overturn *Baker*. They do state what it is that they disapprove in the opinion: "Unfortunately, the court in *Baker* expressed—in *dicta*—its opinion that medical benefits paid in excess of the stated limits might be characterized as personal injury protection benefits and might give rise to subrogation rights."

Although the appellees seem to be complaining about the aspect of the district court's judgment that was adverse to them but which they failed to cross-appeal, in fact, their argument may be seen as more comprehensive than that. Appellees seem to believe that the Court of Appeals' reasoning paralleled their own, and that the illustration chosen by the Court of Appeals for stating the rule of the case was a mistake. However, it seems quite obvious that the illustration correctly reflects the Court of Appeals' reasoning and was employed to ensure in the particular circumstances presented that the reasoning was clearly distinguished from the reasoning that would have led to State Farm's having no right of recovery. There are three possible outcomes of this issue. The first, advocated by Safeco, would entitle the insurer to subrogation on the entire amount it paid to Allen for his medical expenses. The second, ad-

vocated by Allen, would not entitle Safeco to subrogation on any amount it paid to Allen for his medical expenses. Under the third, as held in *Baker*, Safeco is entitled to subrogation on the portion of the amount it paid to Allen for his medical expenses that exceeds the medical benefits coverage of his policy. Each is supported by a separate rationale, and, even though appellees seem to think they embrace the *Baker* rationale, they do not.

Safeco maintains that Missouri law and the Missouri policy govern but that the policy provides that medical expenses sustained by the insured in Kansas will be reimbursed under and as required by the Kansas statute. In other words, Safeco contends that the Kansas statute is the basis for its reimbursing Allen for any and all medical expenses.

Appellees reject the idea that anything other than the insurance policy is the basis for the insurer's reimbursing its insured for medical expenses. They argue that the Missouri policy is the sole source of insurance benefits for Allen and that KAIRA operates only to increase the policy's medical benefits limit to conform to Kansas statutory requirements. With regard to why the Kansas statute's subrogation right does not affect the policy, appellees' position is that subrogation is prohibited under Missouri law. They reject the idea that KAIRA creates an insurance source separate from an automobile liability policy.

The Court of Appeals' reasoning lies somewhere between the positions advocated by Safeco and appellees. The Court of Appeals held that the basis for the insurer's reimbursing Baker was the first-party medical benefits coverage of his policy. The policy afforded up to $1,000 in medical benefits, and Baker's expenses were $511. The court added the following illustration of its rationale:

"The practical result is that Baker is entitled to receive up to $1,000 in benefits plainly provided under the policy and up to an additional $1,000 in personal injury protection benefits. State Farm pays what it is contracted to pay under the policy knowing it is not entitled to subrogation and then has an additional $1,000 exposure under KAIRA, which most probably is subject to subrogation." 14 Kan. App. 2d at 646.

The Court of Appeals envisioned a scheme in which the policy was the basis for the insurer's obligation to reimburse up to $1,000 for

medical expenses and the Kansas statute was the basis for the insurer's obligation to reimburse medical expenses from $1,001 to $2,000. In other words, Baker's policy provided him with the expressed coverage for which he contracted, and any medical expenses over the exhausted policy coverage would have been reimbursed by his insurer in compliance with the Kansas no-fault plan. This is precisely the scheme applied by the district court in the present case.

Pertinent provisions of KAIRA in effect at that time were described in *Baker* by the Court of Appeals:

"K.S.A. 40-3106(a) provides that a nonresident owner of a motor vehicle may not operate such vehicle on the highways of Kansas unless a motor vehicle liability policy conforming with K.S.A. 40-3107 is in effect for such vehicle. K.S.A. 40-3107(f) requires that a motor vehicle liability policy provide personal injury protection benefits to the named insured that, under K.S.A. 40-3103(k), include medical benefits up to $2,000.

"Based upon the above-referenced statutes and *Mayer v. Harris*, 224 Kan. 231, Syl. ¶ 1, 579 P.2d 715 (1978), we conclude that a nonresident owner of a motor vehicle operated on the highways of this state is subject to the provisions of the Kansas Automobile Injury Reparations Act (KAIRA). K.S.A. 40-3101 *et seq*." 14 Kan. App. 2d at 643.

We are told that the liability section of Baker's Missouri policy

"contained an out-of-state provision that allowed Baker to drive the insured automobile upon the highways of other states in full compliance with a particular state's mandatory insurance law. The policy also included separate first-party medical payment coverage of up to $1,000 not subject to subrogation by the insurer.

" . . . At the time of the collision, Kansas required $2,000 in medical benefits as part of the personal injury protection package. K.S.A. 40-3103(k)." 14 Kan. App. 2d at 642.

In conformance with the requirements of K.S.A. 40-3107, the liability section of Baker's policy contained the following provision:

" 'Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law

'1. Out-of-State Coverage.
   If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law;
   a. the policy will be interpreted to give the coverage required by the law; and

b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a **person** collect more than once.' " 14 Kan. App. 2d at 644.

Subsection b of this out-of-state coverage seems to be where the Court of Appeals picked up the term "replacement." In this context, it seems clear that "replaces" is used not to mean "displaces" coverage under the policy but rather "in the place of" otherwise exhausted coverage.

The Court of Appeals continued:

"Baker's policy also provides first-party medical payments insurance up to $1,000. The policy states:

'MEDICAL EXPENSES
'We will pay medical expenses, *for bodily injury* caused by accident, for services, furnished within one year of the date of the accident . . . .

'Persons for Whom Medical Expenses are Payable.
'We will pay medical expenses for *bodily injury* sustained by:
'1. a. the first *person* named in the declarations; . . . .'

"The policy further provides:
'If There Are Other Medical Payments Coverages.
'1. Your Car.
The amount payable for medical expenses to a *person* who sustains *bodily injury* while *occupying your car* will not be reduced if there is other vehicle medical payments coverage.' " 14 Kan. App. 2d at 644.

As we have seen, the Court of Appeals interpreted these policy provisions and the Kansas statutes to mean that PIP benefits do not eliminate the first-party medical benefits under the policy. We agree.

Despite differences in wording, pertinent provisions of Allen's policy do not differ fundamentally from the pertinent provisions of Baker's policy. The "Conditions" section of Allen's insurance policy contains the following provision concerning out-of-state accidents:

"18. 'No-Fault' Laws: If an insured automobile is involved in an occurrence in any state or province (other than the state in which the automobile is principally garaged) in which, under the provisions of the Automobile Reparations Reform law or other similar 'No-Fault' law, the insured automobile is subject to such law,

the provisions of this policy shall be extended to comply with the minimum requirements of the law."

The amendments to the medical expenses section of Allen's policy include the following:

"**Other Insurance**: If there is other medical . . . benefits insurance . . . available from any source against a loss covered by the **Medical Expenses Section** of this policy, this insurance shall be excess insurance over any other valid and collectible medical . . . benefits insurance . . . benefits. The company's share is the proportion that the company's limit of liability bears to the total of all applicable limits. . . .

"If two or more policies apply on an excess basis to a loss covered by the **Medical Expenses Section** of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible medical insurance."

In both *Baker* and the present case, the policies permit the insured to drive the insured automobile in Kansas in full compliance with this state's mandatory insurance law. The policies also include separate medical payment coverage. In both cases, the medical expenses limit falls below the Kansas requirement. In *Baker*, subrogation was expressly prohibited by the terms of the policy. In the present case, the parties agree that the insurer has no right to recover medical payments under the policy. In other words, the terms of Allen's policy seem to present no reason why the result in this case should differ from that in *Baker*.

Thus, the ultimate question for this court is whether to adopt the Court of Appeals' reasoning in *Baker*. That opinion can be simply summarized: Independent of the Kansas statutory requirements, Baker's Missouri policy provided medical benefits up to $1,000. To the extent that Baker's medical expenses could be reimbursed by that $1,000 of coverage, they were, and no subrogation was allowed on those medical payments. The Kansas statute required that Baker, like all nonresident drivers, have an automobile liability policy that provided medical benefits up to $2,000. Baker's policy contained a provision that allowed him to drive the insured automobile in Kansas in full compliance with this state's law. In addition to raising the limit for medical expenses from

$1,000 to $2,000, the Kansas statute granted a subrogation right to the insurer for the additional coverage.

The Missouri Court of Appeals addressed a similar situation in *Gilmore v. Attebery*, 899 S.W.2d 164 (Mo. App. 1995). The automobile accident occurred in Missouri and involved a Kansas plaintiff and an Illinois defendant, who admitted fault. The Kansas plaintiff was paid PIP benefits under his Kansas policy. The court held that Missouri's law denying subrogation rights to the insurer. applied.

In so doing, the *Gilmore* court distinguished two prior decisions, *Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653 (Mo. App. 1994), and *Bell v. Mid-Century Ins. Co.*, 750 S.W.2d 708 (Mo. App. 1988), which held that Kansas law was applicable over Missouri public policy. In *Hartzler*, the automobile accident occurred in Missouri. All of the parties involved in the accident were Kansas residents and insured under Kansas policies. At issue was whether the anti-stacking provisions of Hartzler's Kansas policy or Missouri's public policy provisions prohibiting anti-stacking applied. According to the *Gilmore* court, the distinguishing factor was that "[t]he dispute here is *not between the parties to the insurance contract*, who should certainly be bound by their mutual expectations." 899 S.W.2d at 169. In contrast, the insurer in *Gilmore* was seeking to hold an Illinois resident tortfeasor to Kansas law through a Missouri court.

In *Bell*, Jenkins was involved in an automobile accident in Missouri. He was a Kansas resident insured under a Kansas policy. Jenkins was paid $5,000 in PIP benefits under his policy. He later settled his claim, and his insurer asserted a $5,000 lien against the recovery pursuant to K.S.A. 40-3113a(b). The court held that Kansas law applied and the lien was valid and enforceable. The *Gilmore* court noted that, like *Hartzler*, the dispute was between the original parties to the insurance contract and they were therefore bound by the terms of the Kansas policy even though the accident had occurred in Missouri. In neither *Bell* nor *Hartzler* did Missouri courts impose Kansas law upon a party not otherwise amenable to suit in Kansas. The *Gilmore* court noted that the insurer could sue Gilmore, its insured, in Kansas. "Gilmore, after all, agreed to such

subrogation and yet settled with appellant without protecting State Farm's contract rights." 899 S.W.2d at 168-69. Missouri provided the only connecting activity between the parties. The Illinois resident defendant had no connection to Kansas. The accident and the injuries occurred in Missouri. The Missouri court noted the KAIRA was established "to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles," quoting K.S.A. 40-3102. "As Gilmore and Zinn were promptly compensated for their injuries, Kansas' primary concern in this matter has been met and Missouri's policy against the assignability of personal injury claims remains." 899 S.W.2d at 167.

In *Baker*, the Court of Appeals correctly noted that where there is a conflict of laws, Kansas follows the general rule that the law of the state where the insurance contract is made controls. See 14 Kan. App. 2d at 644. In *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 270, 777 P.2d 1259 (1989), *cert. denied* 493 U.S. 1036 (1990), we observed that Kansas follows the *lex loci* rule, not the "most significant relationship" rule set out in Restatement (Second) of Conflict of Laws § 188 (1969). We did, however, state that Kansas would not apply the law of another state if it violated Kansas public policy, and quoted the following from *Barbour v. Campbell*, 101 Kan. 616, 617, 168 Pac. 879 (1917):

" 'Ordinarily a contract which is valid where made is valid everywhere, but there is a well-known exception to that rule. Briefly stated, the exception is that where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained.' " 245 Kan. at 270.

The medical payment provision of the Missouri policy does not violate Kansas public policy but, to the contrary, is consistent with the stated policy of KAIRA by promptly compensating its insured for personal injuries.

Here, as in *Hartzler* and *Bell*, the dispute is between the parties to the insurance policy. The parties are bound by the terms of the policy. We find the Kansas Court of Appeals' reasoning in *Baker* to be persuasive. In addition, Safeco's argument, based upon

claimed differences between its policy and the one in *Baker*, was considered and rejected by the district court:

"However, whatever the differences may be between the polices, Safeco's argument is still premised upon the effect of K.S.A. 40-3110(a) for support of its claim that the PIP payments become primary when the Missouri insured has an accident in Kansas. That argument was either explicitly or implicitly considered by the court in *Baker* ('There is no provision . . . under KAIRA . . . .') and was rejected."

We agree.

The insured bargained for medical benefits up to $2,000 without subrogation, and he received them. The policy further provided full compliance with Kansas law when driving in Kansas. In *Baker*, the Court of Appeals recognized both in its holding and correctly held that PIP benefits are supplemental to the medical coverage. The *Baker* holding is consistent with the purpose of KAIRA of promptly providing payment for injury received by the insured.

We hold that the first $2,000 paid by Safeco to Allen for medical expenses was paid under the first-party medical benefit and not pursuant to KAIRA, and thus is not subject to subrogation.

We next address the district court's dismissal of Safeco's claims against Allen and Schroeder for lack of personal jurisdiction. As previously noted, both are Missouri residents.

Safeco contends that personal jurisdiction may be asserted over the defendants pursuant to the following provision of the Kansas long arm statute:

"(b) . . . Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

. . . .

(2) commission of a tortious act within this state." K.S.A. 60-308(b)(2).

The district court found "no evidence or suggestion that either [Allen or Schroeder] has committed any tortious act in the State of Kansas." The tortious act, according to Safeco, is their "conversion of monies due and owing to Safeco pursuant to Safeco's lien arising by statute." The insurer contends that the tort occurred in

Kansas because the lien "arises by Kansas statute." No authority is cited for this proposition. It appears that Safeco may be confusing a basis for liability with a basis for the exercise of personal jurisdiction. In the alternative, Safeco suggests that the district court had personal jurisdiction over Allen and Schroeder because "the injury resulting from the tortious act" occurred in Kansas. How or why the injury to Safeco occurred in Kansas is not explained, nor is it self-evident. Safeco alleged only that it was authorized to transact business in Kansas. Thus, Safeco has failed to bring to this court's attention any facts or legal authorities that would cast doubt on the correctness of the district court's decision on jurisdiction.

We affirm the district court's entry of summary judgment in Accurso's favor on the first $2,000 paid by Safeco to Allen for medical expenses and the dismissal of the claims against Allen and Schroeder for lack of personal jurisdiction.

Affirmed.