HODGE BUSINESS COMPUTER SYS-
TEMS, INC., Plaintiff–Appellee,

v.

U.S.A. MOBILE COMMUNICATIONS,
INC., II, Defendant–Appellant.

No. 89–6230.

United States Court of Appeals,
Sixth Circuit.

Argued May 11, 1990.

Decided Aug. 9, 1990.

Kent Masterson Brown (argued), Lexing-
ton, Ky., for plaintiff-appellee.

John E. Selent, Michael A. Valenti (ar-
gued), Hirn, Reed, Harper & Eisinger,
Louisville, Ky., for defendant-appellant.

Before WELLFORD and BOGGS,
Circuit Judges, and DOWD, District
Judge.*

BOGGS, Circuit Judge.

This is an interlocutory appeal by U.S.A.
Mobile Communications, Inc., II (USA Mo-
bile) from a preliminary injunction against
USA Mobile's use of certain computer soft-
ware originally licensed by Hodge Business
Computer Systems (Hodge) to Common-
wealth Telecommunications (Comtel) and
acquired by USA Mobile in a purchase of
Comtel's assets. We vacate the injunction
insofar as it prohibits USA Mobile's *use* of
the software, but leave intact the injunc-
tion's prohibition against *disclosure* or *dis-
semination* of the software to third par-
ties.

I

Hodge sells computer hardware and soft-
ware, USA Mobile provides paging and mo-
bile telephone services, and Comtel pro-
vides mobile telephone services. On Sep-
tember 25, 1984, Hodge and Comtel en-
tered into an "Agreement for Equipment
and Services" whereby Comtel purchased
certain computer hardware and a license to
use certain Hodge software. The software

* The Honorable David D. Dowd, Jr., United
States District Judge for the Northern District of
Ohio, sitting by designation.

consisted of: three software "modules" (AMOS, AlphaWrite, and AlphaCalc) developed by the AlphaMicro company and obtained by Hodge under a non-exclusive license; packages for handling accounts receivable and payable, general ledger, payroll, and reports, developed by Christensen Computer Company and modified by Hodge under a non-exclusive license; and certain other software ("EVX") developed by Hodge itself. Comtel used the computer equipment and the software to perform the billing of its customers. Through the purchase, Comtel also came into possession of the source code for the various packages of software.[1]

On June 17, 1988, USA Mobile purchased most of Comtel's assets. It acquired the computer hardware, the software, and the source code. USA Mobile continued to use the software to perform the billing for the customer accounts it acquired from Comtel. On May 9, 1989, Hodge became aware of the transfer of the software when an independent computer consultant notified Hodge that USA Mobile had given him access to the source code in order to add memory to the system. Another consultant gave Hodge a copy of the source code, which he had obtained from USA Mobile. Upon learning of the transfer, Hodge demanded that USA Mobile either enter into a license agreement and pay the license fee or return the software to Hodge. USA Mobile refused, claiming that Hodge retained no ownership rights in the software after the transfer to Comtel. Subsequent negotiations failed to produce a mutually acceptable settlement fee for use of the software.

On July 28, 1989, Hodge brought a diversity action based on the tort of conversion against USA Mobile, seeking injunctive relief for the unauthorized use of the software and *replevin* of the software. That case is still pending.

On August 18, 1989, the district court granted Hodge a temporary restraining order prohibiting disclosure of the software by USA Mobile, but the court allowed USA Mobile to continue to use the software to perform its billings. Hodge moved for a preliminary injunction to prohibit both the disclosure and the use of the software.

A preliminary injunction hearing was held on September 5, 1989, at which Hodge argued that it would suffer irreparable harm unless the injunction issued. USA Mobile requested that the preliminary injunction not prohibit its continued use of the software, arguing it would suffer hardship if not allowed to use the software to perform its billing and that its mere use of the software could not cause any irreparable injury to Hodge. On September 11, the district court granted the preliminary injunction, to be effective November 7, 1989. The injunction prohibited USA Mobile from disclosing or using the software and ordered it to return the software to Hodge and to transfer all billing data to another computer system under the personal surveillance of a representative from Hodge. On September 28, USA Mobile filed an interlocutory appeal of the preliminary injunction.

## II

USA Mobile appeals only that part of the injunction that prohibits its use of the software and that requires it to return the software to Hodge; it does not appeal the restriction against disclosure or dissemination of the software. Throughout this litigation, USA Mobile has taken the position that it does not object to a prohibition on disclosure of the software to third parties. It claims that it merely wants to continue to use the software to perform the customer billing on the accounts it purchased from Comtel. USA Mobile maintains that until the conversion of the customer billing information to another computer system is completed, it cannot perform its billing without the software obtained from Comtel.[2] Moreover, as a substantive matter in

---

**1.** The source code is the human readable form of the software, written in a recognized, high-level computer language.

**2.** Although USA Mobile claimed at oral argument that it has completed the process of converting the billing information to a new comput-

the underlying litigation, USA Mobile claims that Hodge no longer retains an ownership interest in the software, having relinquished ownership upon sale of the software to Comtel. The issue of ownership is not relevant to the resolution of this matter on appeal, except insofar as it indicates that Hodge's claim that it is entitled to license fees is not undisputed.

In determining whether to grant a preliminary injunction, the court must consider: (1) whether, absent the injunction, the moving party would suffer irreparable injury; (2) whether the moving party has demonstrated a substantial likelihood of success on the merits; (3) whether the injunction would have a harmful effect on third parties; and (4) whether the public interest would be served by the injunction. *USA-CO Coal Company v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir.1982); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir.1982). As one of its objections to the granting of the preliminary injunction, USA Mobile maintains that, as a matter of law, its use of the software cannot cause irreparable injury to Hodge because the only harm that Hodge could suffer from the continued use of the software is monetary—the loss of license fees—and that Hodge could therefore be adequately compensated for that injury by a subsequent award of monetary damages.

■ In order to obtain a preliminary injunction, the harm that would result in the absence of the injunction must be irreparable, not merely substantial. *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). The notion that irreparable injury must include more than a determinable monetary loss is well established. In *Sampson*, the Supreme Court stated that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." 415 U.S. at 90, 94 S.Ct. at 953 (citation omitted). In *Formax, Inc. v. Hostert*, 841 F.2d 388, 391 (Fed.Cir.1988), the court denied a preliminary injunction where "[t]here was no

showing [plaintiff] would suffer injury irreparable and noncompensable by money damages" if defendants continued to use plaintiff's allegedly misappropriated trade secrets during the course of litigation.

■ In support of its argument that Hodge would not suffer irreparable injury, USA Mobile notes that Hodge licenses the software in question on a regular basis to many licensees. In order to use the software provided by Hodge, one need only pay the license fee. Therefore, the unauthorized use of the software (as opposed to the unauthorized disclosure) can only cause the loss of the license fees to Hodge.

In ordering the injunction, the district court stated as a finding, without explanation, that Hodge would suffer irreparable injury unless a preliminary injunction issued. In the findings of fact and conclusions of law, filed later, the district court cited two pieces of evidence in support of its conclusion that irreparable harm would result in the absence of the injunction: Hodge's testimony regarding its need to maintain its "competitive edge" over other computer system vendors and the testimony of Hodge's president regarding the considerable time and expense invested in the development of the software. This finding does not adequately explain how the harm that would result from USA Mobile's use of the software would be irreparable. It does not explain how any such harm could not be cured later by an award of monetary damages.

The record supports USA Mobile's contention that the only harm Hodge stands to suffer from USA Mobile's use of the software is monetary injury. To identify Hodge's reasons for believing that the harm from USA Mobile's use of the software would be irreparable, we look first to Hodge's complaint in the underlying action, its motion for preliminary injunction, and its argument in support of the preliminary injunction. In its complaint in the underlying action, Hodge seeks $25,000 in compensatory damages for unpaid license fees and $500,000 in damages for loss of trade se-

er system, it still contests the entry of the in-

junction against use of the software.

crets and the resulting need for Hodge to rewrite its software. The claim for unpaid license fees does not demonstrate that irreparable injury will occur because of USA Mobile's continued use of the software; lost license fees can be awarded to Hodge at the successful conclusion of its litigation in the underlying case. Furthermore, the loss of trade secrets, if it in fact occurred, cannot form the basis for a finding of irreparable injury due to appellant's use of the software. Whatever harm may have occurred to Hodge because of the alleged loss of trade secrets, no further harm will come to Hodge on that ground because of appellant's continued use of the software, as long as appellant does not disseminate the software. The complaint also states that "immediate and irreparable harm" will result in the absence of injunctive relief, but it does not explain what that harm might be, beyond the harm resulting from the lost license fees and the loss of trade secrets. Therefore, the complaint indicates that Hodge can be made whole for any damage caused by USA Mobile's use (as opposed to disclosure) of the software by an award of monetary damages at the close of the underlying litigation.

Furthermore, in its motion for preliminary injunction, Hodge states only that irreparable harm would occur without the injunction. It does not elaborate. The motion states that the explanation of irreparable injury is more fully set out in the complaint and in the testimony at the TRO hearing. It states further that there is no remedy at law because damages caused by continued use and dissemination cannot be accurately ascertained, citing the case of *Com–Share, Inc. v. Computer Complex*, 338 F.Supp. 1229 (E.D.Mich.1971), *aff'd*, 458 F.2d 1341 (6th Cir.1972). In *Com–Share*, however, the injunction only prohibited the disclosure of the software to unauthorized third parties; the defendant's use of the software was not at issue. At the TRO hearing, Hodge expressed concern that continued use of the software by USA Mobile would necessarily involve disclosure to outside computer consultants and key-punch operators. Similarly, at the preliminary injunction hearing, Hodge expressed concern that in the process of transferring customer billing data to a new computer system, which USA Mobile has always maintained was its ultimate intention, secrets of the software would necessarily have to be disclosed to third parties who did the conversion.[3] Thus, Hodge's statements in its complaint, its motion for preliminary injunction, and its arguments before the district court indicate that its contentions of possible irreparable injury are concerns about disclosure, rather than use, of the software.

Hodge's actions also indicate that the only harm it stands to suffer from USA Mobile's continued use of the software is lost license fees. When Hodge learned of USA Mobile's acquisition of the software, it offered to allow USA Mobile to continue to use the software if it agreed to enter a licensing agreement (with its restrictions on disclosure) and pay the license fee. Since the licensing fee for the software in question is well documented and widely advertised by Hodge, the trial court in the underlying action possesses a clear measure of damages to compensate Hodge for any unauthorized use of the software, should it ultimately decide for Hodge.

On appeal, Hodge claims that its concern about appellant's use of the software goes beyond the money it might lose in unpaid license fees. It contends that to allow USA Mobile to continue to use the software without entering into a licensing agreement would "render[ ] all of the other licensing agreements of Hodge worthless pieces of paper," and that it "violates ... the sanctity of contract" in that Hodge should be able to control whom it trusts with its software. (Appellee's brief at 22–23.) These statements do not show that continued use of the software would constitute irreparable injury to Hodge. First, the argument that Hodge's other licensing agreements would be rendered worthless by USA Mobile's unlicensed use of the software is based on the fact that Hodge's

---

**3.** Counsel for USA Mobile disputed that contention, stating that the conversion could be effected without disclosing the software to any outsider. (J.App. at 537).

licensing agreements contain extensive master and end-user provisions designed to protect Hodge's rights in the software, and that without entering into such an agreement, appellant is not subject to those provisions. But those provisions are concerned with prohibiting the licensee from disclosing the software to parties who have not entered into similar agreements. Disclosure of the software might indeed cause Hodge irreparable injury, but there is nothing in the provisions of Hodge's license agreement that indicates that irreparable injury would result from mere unauthorized use of the software by one party.

▆ As to the sanctity of contract, presumably Hodge is referring to the contract it had with Comtel which (it argues) did not permit Comtel to transfer the software to anyone else. A contract's sanctity, however, lies in the right to sue for damages in the event of breach, not in the right to have specific performance (which is an equitable, not a contractual, remedy). Hodge retains that right as against Comtel and any other licensee. No contract exists between Hodge and USA Mobile.

▆ At most, Hodge could claim that the knowledge that USA Mobile is using the software without paying the license fees might cause other licensees to balk at paying their required license fees. That is a legitimate concern, but it is one for which Hodge retains an adequate remedy at law, namely enforcement of the terms of the license agreements. Accordingly, that concern cannot form the basis for a preliminary injunction.

Finally, Hodge argues that if the court restricts it to monetary (as opposed to injunctive) relief for USA Mobile's use of the software, it will have to come back to the court each year seeking past monthly fees. The argument is incorrect. If Hodge wins the underlying litigation, it may recover all its lost license fees in a one-time damage award. If it loses the underlying case, then the matter is moot.

In short, all Hodge's concerns that genuinely relate to fear of irreparable injury are adequately addressed by a preliminary injunction against disclosure or dissemination of the software. Of course, from Hodge's point of view, a preliminary injunction prohibiting use of the software and requiring its immediate return would even more effectively allay its fears of disclosure, but the standard for a preliminary injunction is not to enact the most effective resolution of the moving party's legitimate concerns. In an ongoing dispute between parties with competing interests and unresolved legal claims, the irreparable injury requirement serves to protect the legitimate interests of the non-moving party.

Throughout the litigation of the preliminary injunction before the district court and again at argument before this court, Hodge has expressed the fear that USA Mobile's continued use of the software would result in revealing the software to systems maintenance personnel and other third parties. The injunction against disclosure clearly prohibits disclosure to such persons and USA Mobile does not contend to the contrary. If Hodge perceives that such disclosures are taking place, its remedy is to enforce the injunction against disclosure.

### III

Because Hodge's failure to establish the danger of irreparable injury adequately disposes of the appeal in this case, it is not necessary for us to address USA Mobile's alternative claims that Hodge failed to show a likelihood of success on the merits in the underlying action and that certain due process and procedural defects accompanied the granting of the injunction.

Accordingly we vacate that part of the preliminary injunction that prohibits USA Mobile from using the software and requires it to return the software to Hodge. We leave intact that part of the preliminary injunction that prohibits USA Mobile from disclosing or disseminating the software to parties who have not entered into a licensing agreement with Hodge concerning such software, noting that the injunction prohibits USA Mobile from disclosing the soft-

ware to any outside maintenance personnel or keypunch operators.