WESTERN FORMS, INC., Plaintiff,

v.

FOUNDATION FORMS & SUPPLY,
INC., et al., Defendants.

No. C–1–93–128.

United States District Court,
S.D. Ohio, W.D.

April 9, 1993.

Jerry Sallee, Cincinnati, OH, for plaintiff.

Bradley Smith, Dayton, OH, for defendants.

---

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction and upon a hearing thereon held April 5 and 6, 1993, at which time evidence and testimony were presented. Plaintiff Western Forms, Inc. (Western) seeks an injunction against Defendant Foundation Forms & Supply, Inc. (Foundation) and its officers, agents and employees to prevent them from using information improperly obtained from the Plaintiff. In accordance with Rule 52, Fed.R. of Civ.P., the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

### I.

### FINDINGS OF FACT

1. Marlin Raisch was employed by the Plaintiff in April, 1988, as Service Manager at Plaintiff's Service Center in Ohio (Center). In such capacity Mr. Raisch hired an Office Manager and a truck driver and proceeded to oversee Plaintiff's operations in Ohio, Kentucky and Indiana. Both Plaintiff and Defendant Foundation are in the business of providing aluminum forms used to pour concrete walls. They also sell expendable supplies that are needed when using such forms. Defendant Marlin Raisch was employed in the concrete wall industry prior to his employment by Plaintiff.

2. The events surrounding this litigation occurred in December, 1992, and January, 1993. At sometime prior to December 31, 1992, Defendant Raisch, while in the employ of Western determined to begin his own business. He purchased supplies from a company known as Wall–Ties and Forms, Inc. which he estimated involved Fifty to Sixty Thousand Dollars (Pltf. Ex. 20). The order for these supplies was entered on December 31, 1992, and shipped January 13, 1993. During the week beginning January 11, 1993, the following events occurred:

a. Kathryn Sorrel, who was employed in the Center terminated her employment on Wednesday, January 13, 1993.

b. On Friday, January 15, 1993, Defendant Raisch sent a Letter of Resignation (Deft. Ex. E) to Scott Cherryholmes, Regional Manager of Western. The Letter of Resignation was mailed sometime on Friday, January 15, 1993. It did not reach Mr. Cherryholmes until after January 17, 1993. No official of Western had any prior knowledge that Mr. Raisch intended to resign. Actual notice was given to Mr. Cherryholmes late in the evening of Sunday, January 17, 1993. In a telephone call he was advised by Mr. Raisch that there was a truckload of freight arriving the next morning and that there would be no one there to accept it.

c. The third employee of the Center, Jesse Foulkes, likewise quit during that weekend.

3. On January 18, 1993, when Mr. Cherryholmes arrived at the Center he found documents missing, the "hard drive" of the office computer erased and the answering machine attached to the telephone disconnected. The Center had effectively been put out of business.

4. Among the items removed were a book of delivery maps indicating the route to be taken in order to make deliveries to the various customers and a number of customer files, including the following:

1. Copies and originals of WFI customer orders and WFI order "pick list" for almost all Western customers. Most in-

formation included copies of WFI order forms, with WFI logo/identification trimmed from forms.

2. Copies of Western Forms Aluminum Forming System purchase contracts with Western Forms customers, examples include:

Berlin Contractors, 9/25/84 delivery, order number CO 17782

Butler Concrete, 12/3/91 proposal

Central Ohio Poured Wall proposal dated 9/2/92

Charlie's and Bill proposal/quote file

Custom Concrete quote files, quote work sheets, Western Forms customer order acknowledgement.

Edsall proposal and quote # 3550

Eliason proposal dated 1/16/92

Fiore proposal dated 1991

L.E. Hobbs form order and proposal dated 4/2/91

Hoyer order histories and form purchase records, various date.

Isenberg Construction, Form order proposals, form purchases, various date.

Unlimited Concrete proposal including copies of original invoicing of Form Set.

P.R. Wisenhoffer Proposal # 6681

It is agreed by the parties that in some instances Defendant Raisch made copies of documents and in other instances took the original document. Subsequently some of the documents, including the route maps, were returned.

5. The Plaintiffs hired a private investigator, Donald Hopper, who observed the premises occupied by the Defendant Foundation. On March 2, 1993, he observed two males and a female, including Defendant Raisch, throwing documents into a fire they had made outside of such premises. Subsequently Mr. Hopper retrieved unburned scraps from the fire and was able to determine thereby some of the documents that had been burned. The documents included: an invoice to McMonigle Foundations, dated August 29, 1988 (Pltf. Ex. 34); an invoice to Rite Wall, Inc., dated September, 1988 (Pltf. Ex. 35); an invoice to Advance Foundation, dated September, 1988 (Pltf. Ex. 36); an invoice to Advance Foundations, dated August, 1988 (Pltf. Ex. 37); an invoice to Advance Foundation, dated August, 1988 (Pltf. Ex. 38); and an invoice to Advance Foundation, dated September, 1988 (Pltf. Ex. 39).

6. Under Plaintiff's method of operation one copy of each sales invoice was given to the person who would receive commission from that sale. While Defendant Raisch had every right to retain his copy of invoices on which no commission had yet been paid, there was no evidence presented to the Court that he was owed commissions for sales made in 1988. His retention of invoices noted in Finding of Fact 5 was unexplained.

6. By agreement of counsel Mr. Hopper was permitted to examine the premises occupied by Foundation. He noted in Plaintiff's Exhibit 8 thirteen Western files that were in the Defendant's possession. Evidence presented to the Court indicated that eleven of those files were never returned to Plaintiff. Mr. Hopper so noted on page 4 of Plaintiff's Exhibit 8. During the hearing of this matter, two files were in fact returned. The weight of the evidence, however, indicates that Defendant is in possession of approximately nine customer files that belong to Western.

7. Both Plaintiff and Defendant operate in a limited market. Defendant Raisch had dealt with some of the same customers prior to his employment by Plaintiff. The market is limited to those companies that pour concrete walls. The Court has independently determined that "Cement Contractors" are listed on pages 258 through 261 of the current Cincinnati Bell Yellow Pages. While Defendant Raisch acquisition of Plaintiff's actual customer list made it substantially easier for him to compete it must be understood that with a minimum amount of labor the names of all potential customers in the service area of Ohio, Kentucky and Indiana are obtainable.

## II.

## OPINION

■ The device of injunctive relief in a matter such as this requires a careful balanc-

ing of the rights of each party. Western is entitled to have its "trade secrets" remain confidential. The Defendant, however, in the absence of any limiting employment agreement or "secrecy" agreement is entitled to terminated his employment and to compete with Western. Any injunction issued by this Court will affect that competition. The facts of this case do not lend themselves to either an injunction that would close Foundation's business or a complete denial of injunction that would disregard Defendant's actions. The testimony indicated and the Court's own inquiry has determined that a customer list in this case is not proprietary information. The Defendant Raisch had previous contact with some customers during his 20 years in the business. The evidence disclosed that such information is readily available. The price at which Plaintiff sold various merchandise is likewise not "secret" information. As to these items an injunction should not issue.

The Court has been directed to the case of *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.,* 24 Ohio St.3d 41, 24 OBR 83, 492 N.E.2d 814 (1986). The Supreme Court of Ohio in the second branch of the syllabus stated:

> The trial court in its analysis of the particular facts of a misappropriation of trade secrets case may determine that the circumstances were so egregious and violative of the relationship of the parties involved within the misappropriation that the ultimate sanction of a permanent injunction prohibiting the use of such unlawfully obtained commercial information might well be in order.

■ The facts of the *Valco* case, however, are not those of the case before this Court and it cannot be applied automatically. Egregious circumstances do justify an injunction. The determination, however, of what constitutes "egregious" conduct requires an individual inquiry in each case. The holding of the Supreme Court requires the trial court to inquire whether the circumstances were so egregious and violative of the relationships of the parties that an injunction might be warranted. The circumstances in this case approach, but do not reach, the level of "egregious." Funk &

Wagnalls *New International Dictionary* of the English Language on page 404 defines egregious as:

> Flagrant; outstanding in bad or evil qualities. . . .

The conduct of Defendant rather may be characterized as malicious, which is defined in the same authority at page 771 as:

> A disposition to injure another, evil intent, spite, ill will. . . .

Defendant Raisch's actions in effectively shutting down the operation of the Center were spiteful, mean and malicious as the these words are commonly used. The Court does not refer to the legal concept of "malice." These actions, however, were not permanent. In some instances, items such as the route maps were returned. The computer presumably was not damaged and returned to operation. The answering machine was reactivated and Plaintiff ultimately restaffed the Center. Western continues its business operation of the Center. These matters will be addressed in damages.

The manner in which Defendant Raisch and his subsequent employees left without notice is further evidence in the Court's mind of a spiteful and mean effort to injure Western.

■ Not all of the items removed may be disposed of under the above discussion. Plaintiff's Exhibit 8, listing files that were removed and not returned, raises a different question. As to those customers whose files are involved, Western is entitled to injunctive relief and all the Defendants, and their agents and employees, are preliminarily enjoined from any further dealings with those companies listed in Plaintiff's Exhibit 8, whose files have not been returned. That injunction will remain in effect until the hearing of this matter on the merits or six months from the date of this Order, whichever occurs first.

■ The terms of Rule 65(a)(2), Fed. R.Civ.P., apply herein. There does remain the determination of damages which may be applicable. Such damages being legal in nature should be determined by a jury, not by the Court. Accordingly, pursuant to Rule 65(a)(2), the Court does determine that the

evidence presented need not be repeated at the trial on the merits, but will instead become part of the record for jury consideration.

## III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

B. The standard for awarding a preliminary injunction in the Sixth Circuit is as follows:

1. whether, absent the injunction, the moving party would suffer irreparable injury;

2. whether the moving party has demonstrated a substantial likelihood of success on the merits;

3. whether the injunction would have a harmful effect on third parties; and

4. whether the public interest would be served by the injunction.

*Hodge v. U.S.A. Mobile Communications,* 910 F.2d 367 (6th Cir.1990). *USACO Coal Company v. Carbomin Energy, Inc.,* 689 F.2d 94, 98 (6th Cir.1982); *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir.1982).

Under the evidence presented to the Court, Western has presented evidence indicating a substantial likelihood of success on the merits both as to partial injunctive relief and as to damages. The action of the Defendants has caused some irreparable injury to Western. The issuance of a preliminary injunction would not cause substantial harm to any of the Defendants herein and since Western has shown some taking of its trade secrets, it is in the public interest that such rights be protected.

■ C. Where a defendant has removed information from a Plaintiff that is otherwise easily available, such information should not be the subject of an injunction.

■ D. Where a defendant has removed proprietary information from a Plaintiff that has interfered with Western's ability to conduct its business, a preliminary injunction should issue.

■ E. Where the taking of Plaintiff's property can be compensated by damages, irreparable injury has not been shown and as to that information the amount of damages should be determined by a jury.

F. In accordance with the foregoing a preliminary injunction should be and is hereby issued against Defendant, its agents and employees, barring such persons from doing business with the companies listed on Plaintiff's Exhibit 8, page 4 for a period of six months or until the hearing of this matter on its merits, whichever occurs first.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.