# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3380

_____

| | | |
|---|---|---|
| Alton Brown; Linda F. Brown, | * | |
| | * | |
| Plaintiffs / Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Home Insurance Company, | * | |
| | * | |
| Defendant / Appellee. | * | |

_____

Submitted: April 21, 1999
Filed:  June 2, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.


Alton Brown and his wife Linda F. Brown sued Home Insurance Company
(Home ) to recover under the uninsured motorist provisions of two insurance policies
issued by it.  The district court[1] granted summary judgment to Home, and the Browns
appeal . They argue that the court erred in its choice of law analysis and in granting

---

[1]The Honorable Mary Ann Medler, United States Magistrate Judge for the
Easter nDistrict of Missouri, presiding with the consent of the parties   See 28 U.S.C.
§ 636(c).

summary judgment on the merits of their claims for breach of contract, bad faith and vexatious refusal to pay, and loss of consortium. We affirm the judgment.

I.

Alton Brown, a resident of Tennessee, was injured in October 1993 when the tractor trailer he was driving through Missouri collided with another vehicle driven by an uninsured resident of Missouri, Christopher Lang. Brown suffered a fractured wrist and other injuries to his eye, hand, and chest, and he is apparently not able to return to his chosen occupation of truck driving. At the time of the accident, he was employed by Adair Transportation (Adair) which had leased the tractor trailer and Brown's services to Chemical Leaman Corporation (Chemical). Chemical carried liability insurance with Home.

Brown was the sole driver assigned to the truck which he drove regularly on interstate trips. When he was home in Tennessee he parked the rig at his house or at Chemical's Memphis depot. The trailer was licensed and registered in Tennessee, but the tractor was licensed and registered in Texas.

Brown filed a workers' compensation claim against Adair and its compensation carrier, CIGNA Property & Casualty Company, and he ultimately received $63,362.66 in a settlement. He also filed a claim for uninsured motorist benefits with Home to recover under two policies that Chemical had purchased to cover its fleet of trucks. Both policies recognize that the covered vehicles are likely to travel through various states. Policy TKF167115 (policy 115) is referred to by the Browns as the "allstates policy," and it references the uninsured motorist laws of several states. The Browns refer to the other policy, TKF167116 (policy 116), as the "Texas policy." It is similar to policy 115, but also has several forms labeled "Texas Standard Automobile Endorsement" that include language apparently required by Texas law. Both policies provide that uninsured motorist coverage will not apply to benefit directly or indirectly an insurer under any workers' compensation law. Policy 115 also says it will offset all

2

amounts paid or payable as workers' compensation benefits, and policy 116 says it will pay amounts not paid by workers' compensation up to the policy limits. It is undisputed that both policies were in effect on the day of the accident and that the vehicle Brown was driving was covered under Chemical's liability insurance because of the lease between Chemical and Adair.

Home denied coverage under both policies, and the Browns filed this suit in the Eastern District of Missouri. They alleged in count one of their second amended complaint that Home had breached its contractual obligation to pay uninsured motorist benefits. In count two they requested damages for bad faith and vexatious refusal to pay. In count three Linda Brown pled loss of spousal consortium. Home filed a motion to dismiss, and the district court requested additional briefing on the choice of law issues. On June 8, 1998, the magistrate judge issued an order denying Home's motion to dismiss and concluding that Tennessee law governed under Missouri choice of law rules. Home's subsequent motion for summary judgment was granted on August 6, 1998 on the grounds that there was no genuine issue of material fact concerning the coverage of the policies. The court emphasized that Brown had received workers' compensation benefits in excess of the maximum benefits available under either policy and that the provisions limiting the uninsured motorist coverage were enforceable under Tennessee law. The court then dismissed as moot the claim for vexatious refusal to pay and the request for punitive damages, and it denied Linda Brown's claim for loss of consortium as derivative of her husband's failed claims.

II.

The Browns appeal from the judgment. They argue the court erred in applying Tennessee law because Texas had the most significant contacts with the case and because the relevant Tennessee law violates the public policy of Missouri. They also argue that summary judgment was improperly granted because Home had failed to show the uninsured motorist coverage would benefit the workers' compensation carrier,

3

because the language in policy 116 is ambiguous, because not all of the Browns' losses were covered by the workers' compensation settlement, and because there are disputed fact questions regarding whether Chemical had properly rejected uninsured motorist coverage under both policies.[2]  Home defends the court's analysis, and it also contends that policy 116 does not apply to the Browns' claims and that addenda to both policies amounted to valid rejections of uninsured motorist coverage.

We review a district court's grant of summary judgment de novo and under the same standard.  JN Exploration & Prod. v. Western Gas Resources, Inc., 153 F.3d 906, 909 (8th Cir. 1998).  Summary judgment is appropriate if, when the facts are viewed in the light most favorable to the nonmoving party, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); id.  The district court's interpretation of Missouri law is entitled to no deference.  Leavitt v. Jane L., 518 U.S. 137, 145 (1996); First Colony Life Ins. Co. v. Berube, 130 F.3d 827, 829 (8th Cir. 1997).  De novo review is applied to the construction and interpretation of contracts, Silgo, Inc. v. Nevois, 84 F.3d 1014, 1019

---

[2]The Browns also move to strike Home's separate appendix which contains briefs, motions, and memoranda of law submitted to the district court, as well as Alton Brown's deposition which was cited in, but not attached to, Home's amended motion for summary judgment.  The various memoranda of law have some independent relevance as they shed light on the arguments made to the district court, and this court always retains discretion to review the entire district court record.  Fed. R. App. P. 30(a)(2).  Brown's deposition is submitted pursuant to Fed. R. App. P. 10(e), to correct an omission and to permit a more accurate understanding of the material facts; there is no indication that the district court requested that a copy of his deposition be filed or that the Browns did not have a copy of the deposition.  This is not a situation where a party is seeking to introduce evidence on appeal after it failed to provide complete evidence to the lower court. See Rivers-Frison v. Southeast Missouri Community Treatment Ctr., 133 F.3d 616, 619 n.2 (8th Cir. 1998).  For these reasons, the motion to strike Home's separate appendix is denied.

(8th Cir. 1996), and to choice of law issues.  Northwest Airlines v. Astraea Aviator Servs., 111 F.3d 1386, 1392 (8th Cir. 1997).

A.

A fundamental issue on appeal is whether the district court erred in selecting Tennessee law as the rule of decision.  In this diversity case, the federal court in Missouri was bound to apply the forum's choice of law principles.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1320 (8th Cir. 1991).  Under Missouri law there is not an actual conflict of law unless the interests of two or more states cannot be reconciled.  State ex rel. Broglin v. Nangle, 510 S.W.2d 699, 703 (Mo. 1974) (en banc).

Both Texas and Tennessee had real interests in this case.  The Browns resided at the time of the accident and continue to reside in Tennessee.  The trailer is registered in that state, and the tractor and trailer were principally garaged there.[3]  In addition, policy 115 includes a Tennessee uninsured motorist coverage endorsement form among its references to several states' uninsured motorist laws, and the Browns received Home's letters denying coverage at their Tennessee address.  Texas, on the other hand, is where the tractor was registered, and policy 116 makes several references to Texas

---

[3]The Browns argue that there is a factual dispute regarding where the truck was principally garaged.  Mike Adair stated in an affidavit submitted by the Browns that the vehicle was principally garaged in Tennessee at the time of the accident, and Alton Brown testified in his deposition that the truck stayed in Tennessee during down time, whether parked at his house, Chemical's depot, or elsewhere.  In a subsequent affidavit, Brown added that the truck was "based" out of Texas and not out of Chemical's Memphis terminal.  To the extent this conflicts with his earlier testimony it may be disregarded , Plymouth Foam Prods., Inc. v. City of Becker, 120 F.3d 153, 155 n.3 (8th Cir. 1997), and other evidence regarding where the truck was based was not enough to create a genuine question regarding where the truck was principally garaged.

5

and includes several standard forms labeled "Texas Standard Automobile Endorsement." Texas has an interest in the construction of insurance policy provisions required under Texas law and in regulating the insurance provided for a truck registered in its state. Tennessee has an interest in insurance contracts providing coverage for its residents, in regulating the amount of insurance required for trucks principally garaged in its state, and in the regulation of a trailer principally garaged and registered in its state.[4]

The law of the two states is in conflict on the enforceability of uninsured motorist provisions which reduce coverage when workers compensation benefits are available or when coverage would benefit a workers' compensation insurer. Texas law invalidates clauses limiting uninsured motorist coverage based on the applicability of other insurance. American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793 (Tex. 1972). Clauses providing that coverage shall not apply directly or indirectly to benefit a workers' compensation insurer are also invalidated in Texas. Employers Cas. Co. v. Dyess, 957 S.W.2d 884, 890-91 (Tex. App. 1997). Under Tennessee law clauses reducing damages payable under uninsured motorist coverage by the amount paid or payable under any workers' compensation law are clearly valid unless they operate to deny payments to an insured of less than the minimum set by statute. Terry v. Aetna Cas. & Surety Co., 510 S.W.2d 509 (Tenn. 1994). This is so regardless of whether the workers' compensation benefits were actually received by the injured party. Dwight v. Tennessee Farmers Mut. Ins. Co., 701 S.W.2d 621, 622 (Tenn. Ct. App. 1985). The fact that in Tennessee a subrogation lien will not attach when

_____

[4]Several other states also have limited contacts with this litigation. The accident occurred in Missouri, and the uninsured motorist apparently resides or resided in that state. Illinois is where the contracts were formed and executed. Home is incorporated in New Hampshire and has its primary place of business in New York; one letter denying coverage was mailed from New Jersey and the other from Pennsylvania. Adair, Brown's employer, is based in Mississippi, while Chemical (to which Brown and the rig were leased) is headquartered in Pennsylvania.

6

workers' compensation benefits have been offset from insurance coverage, Hudson v.Hudson Mun. Contractors, Inc., 898 S.W.2d 187, 189-90 (Tenn. 1995), may also suggest that clauses reducing coverage directly or indirectly benefitting a workers' compensation insurer are valid there.

Missouri has adopted sections 188 and 193 of the Restatement (Second) Conflict of Laws to use in resolving true conflicts of law regarding insurance contracts,  See, e.g., Atlas Intermodal Trucking Serv. Inc. v. United Fire & Cas. Co., 973 S.W.2d 174, 177 (Mo. Ct. App. 1998).  Section 193 provides that:

> The validity of a contract [and the] casualty insurance and rights created thereby are determined by the local law of the state where the parties understood was to be the principal location of the insured risk during the term of the policy unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in  § 6.

Restatement (Second) Conflict of Laws § 193 (1971) [hereinafter Restatement].  This means that the single most important factor in the choice of law analysis is the principal location of the insured risk if it can be determined.  Id.; see also Hartzler v. American Family Mut. Ins. Co, 881 S.W.2d 653, 655 (Mo. Ct. App. 1994).  The location of the insured risk in an auto insurance contract is generally the state where the vehicle is expected to be during the major portion of the insurance period; for auto liability that is where the vehicle is principally garaged. Restatement § 193 cmt. b; see also Hartzler, 881 S.W.2d. at 655.  The insurance contracts at issue in this case covered multiple vehicles expected to travel through various states.  Courts often treat multiple risk policies as if they involved separate policies for each state, with each insuring an individual risk.  See Crown Ctr. Redev. Corp. v. Occidental Fire & Cas. Co., 716 S.W.2d 348, 358 (Mo. Ct. App. 1986); see also Restatement § 193 cmt. f.  Even under this approach it is not always possible to find a location for the insured risk.  Comment

(a) to section 193 notes that "there may be no principal location of the insured risk in the case of contracts for the insurance of things, such as . . . trucks . . . that are constantly on the move from state to state. In such a case, the location of the risk can play little role in the determination of the applicable law." Restatement § 193 cmt. a.

It is undisputed that Brown drove the truck to pick up and drop off loads throughout the contiguous forty-eight states, Canada, and Mexico and that when he was at home in Tennessee he parked the truck in that state. These circumstances are of course not the same as when a family car is principally garaged in the state in which it is registered and where the premium is likely determined on that basis. See Hartzler, 881 S.W.2d at 655. Nonetheless, to the extent the insured risk here had a principal location, it was in the state where it was principally garaged, namely Tennessee.

This case does not turn only on the location of the insured risk, however, because consideration of the relevant contacts under § 188 and of the principles underlying § 6 of the Restatement also lead to application of Tennessee law.[5]

---

[5] Section 188 provides that:

(2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188. The principles found in section 6 are:

Tennessee was the state where the trailer was registered, the plaintiffs resided, and the truck and trailer were principally garaged. The only connection between the litigation involving policy 115 and the state of Texas was the fact that the tractor driven by Brown was registered in Texas. Although the accident occurred in Missouri, it had little policy interest in the litigation, and the fact that the contract was formed in Illinois is in itself insignificant. Restatement § 188 cmt. e. Moreover, none of the factors set out in § 6 would appear to counsel against the choice of Tennessee law. The court did not err in concluding that Tennessee law applied to the claims under policy 115.[6]

The Browns make an additional argument for the application of Texas law to the interpretation of policy 116, saying it is a "Texas policy" and includes provisions required by Texas law. The inclusion of provisions mandated by a specific state's law

---

(2) When there is no [statutory directive on the choice of law], the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

Restatement § 6.

[6]We note that the Browns themselves asserted in a choice of law memorandum to the district court that "Tennessee law probably governs the issues under Home Insurance policy TK F16711 15." See Davidson & Schaff, Inc. v. Liberty Nat. Fire Ins. Co., 69 F.3d 868, 869 (8th Cir. 1995) ("The rule that we will not address arguments raised for the first time on appeal applies even more forcefully when the appellant took the opposite position in the district court.").

may show where the parties intended the insured risk to be located, <u>see</u> <u>Hartzler</u>, 881 S.W.2d at 655, and Missouri courts applying the Restatement's "most significant contacts" test consider whether such provisions were specifically required by the law of a certain state, for "it would be strange indeed if contract obligations imposed by law would change whenever a state line is crossed." <u>South v. American Interinsurance Exch.</u>, 743 S.W.2d 421, 422 (Mo. Ct. App. 1987) (quoting <u>State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.</u>, 671 S.W.2d 276 (Mo. 1984) (en banc); <u>see also</u> <u>Markway v. State Farm Auto. Ins. Co.</u>, 799 S.W.2d 146, 148-50 (Mo. Ct. App. 1990). These Missouri cases holding that the controlling law was that of the state referenced in the contract all involved personal auto insurance, however. The insurance policy in each covered a personal auto which was registered, licensed, and at least sometimes garaged in the state whose law was mentioned in the policy. <u>See</u> <u>Markway</u>, 799 S.W.2d at 149; <u>South</u>, 743 S.W.2d. at 422; <u>State Farm</u>, 671 S.W.2d at 277 n.2. The policies here deal with over the road trucks, and they are not so clearly focused on a particular state. Since both policies 115 and 116 have provisions specifying that uninsured motorist benefits will not be paid to benefit a workers' compensation insurer, it does not appear that this provision in 116 was included to comply only with Texas law. Another provision in policy 116 further undermines the contention that the parties believed Texas to be the principal location of the risk or that they intended Texas law to be applied. The general truckers coverage form provides that:

> While covered auto is away from the state where it is licensed we will: (1) Increase the Limit of Insurance for Liability coverage to meet the limit or limits specified by a compulsory or financial responsibility law in the jurisdiction where the covered auto is being used. (2) Provide the minimum amounts and types of other coverages such as no-fault, required of out of state vehicles by the jurisdiction where the covered auto is being used.

We conclude that the inclusion of forms required by Texas law in policy 116 does not tip the balance such that the Texas contacts to the litigation regarding claims under this

policy outweigh those of Tennessee.  The court did not err in applying Tennessee law to issues under this policy as well.

Finally, the Browns argue that even if Tennessee law applies to the interpretation of the contracts  under choice of law rules, that law should not be applied to enforce the uninsured motorist exclusions because Missouri has a public policy against permitting such exclusions.  Langston v. Hayden, 886 S.W.2d 82, 86 (Mo. Ct. App. 1994) ("If the law of a foreign state violates our public policy, as a general rule, it will not be enforced by our state courts.").  Under Missouri law insurance provisions which allow workers' compensation benefits to be offset from recovery under uninsured motorist provisions have been found to violate Mo. Rev. Stat. § 379.203 (requiring uninsured motorist coverage).  Cano v. Travelers Ins. Co., 656 S.W.2d 266, 270 (Mo. 1983) (en banc); Douthet v. State Farm Mut. Auto Ins., 546 S.W.2d 156, 159 (Mo. 1977) (en banc.).   More recently, however, such a provision has been found enforceable in Missouri when it is valid under the law of decision, even though Missouri law would void it.  Markway, 799 S.W.2d at 150.

B.

The Browns also challenge the district court's analysis of the merits of Home's motion for summary judgment under Tennessee law.  The court held that the provisions in both policies stating that uninsured motorist coverage does "not apply directly or indirectly to benefit . . . an insurer . . . under any workers' compensation . . . law" precluded coverage since Alton Brown had already received such benefits in an amount higher than the maximum payout under either policy.

Policy 115 provides uninsured motorist coverage "as per state statutory laws." It explicitly rejects uninsured motorist coverage where a rejection is allowed and selects the lowest permissible limit for this type of coverage in other states.  The policy includes a Tennessee uninsured motorist coverage endorsement which establishes a

11

limit of $60,000 in bodily injury coverage per accident.[7]   Both the Tennessee endorsement and the generally applicable uninsured motorist coverage endorsement contain unambiguous language indicating that the coverage will not apply to "the direct or indirect benefit of any insurer or self-insurer under any workers' compensation disability benefits or similar law" and that "any amount payable under this insurance shall be reduced by: all sums paid or payable under any workers' compensation disability benefits of similar law . . . ."   Under Tennessee law, setoff provisions requiring a reduction of uninsured motorist benefits by sums received as workers' compensation are valid and enforceable.  Hutchinson v. Tennessee Farmers Mut. Ins. Co., 652 S.W.2d 904, 906 (Tenn. Ct. App. 1983) (citing Tenn. Code Ann. § 56-7-1205).   Under such provisions, insurers are entitled to set off the full amount of worker's compensation benefits payable to the plaintiff from any amount due under a policy, provided the injured party is guaranteed a recovery at least equal to the minimum liability limits required by Tennessee law.  Id.; Soren v. Ezelle, 737 F. Supp 49, 50 (M.D. Tenn. 1990).

The Browns also claim Home breached its contractual duty to pay under policy 116.[8]  This policy is substantially similar to policy 115, but it contains a number of form sheets labeled as "Texas Standard Automobile Endorsement" which are apparently

---

[7]Home also argues that addenda attached to both policies effectively rejected the uninsured motorists coverage listed in the general policy forms, but we need not address this point given our disposition of the other issues involved.

[8]Home asserts that coverage under policy 116 was never triggered and that there is no reason why either policy 116 or Texas law applies to this case.  We note that policy 116 includes a provision limiting liability coverage to vehicles which are not covered under 115. Policy 115 in turn has a similar provision limiting liability coverage to vehicles not covered under 116.  Neither side has adequately discussed whether these provisions affect the availability of uninsured motorist benefits under either policy or if a specific triggering event was required to bring the Browns' claims within the scope of policy 116.  We need not reach this issue in light of our other discussion.

required by the state of Texas. The policy provides uninsured motorist coverage for "owned autos subject to a compulsory uninsured motorists law" with a payout limit of $55,000. Both the general truckers declaration form and a separate Texas endorsement form limit the uninsured motorist coverage by providing that it "shall not apply directly or indirectly to benefit . . . any insurer or self-insurer under any workers' compensation, disability benefits or similar law . . . ."[9] The Texas endorsement form also contained an additional limits on insurance provision which states that:

> In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Schedule or in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection coverage.

The Browns argue this second provision contradicts the first and makes the policy ambiguous. To support this position they argue the second provision does not limit potential payouts, but instead is an agreement to pay all additional claims not covered by workers' compensation. This is a strained reading, not controlled by the "ordinary and natural meaning" of the words used. See, e.g., State v. Williams, 690 S.W.2d 517, 529 (Tenn. 1985). It also ignores the precatory language which indicates the provision is intended to limit payouts when there is already coverage. The subrogation lien created in favor of a payor of workers' compensation benefits under Tenn. Code Ann. § 50-6-112(c) does not attach when the workers' compensation benefits received have already been offset from the uninsured motorist coverage.

---

[9]The truckers coverage form further provides that the insurance does not apply to: "Any obligation for which the insured or the insured's insurer may be held liable under any workers compensation, disability benefits, or unemployment compensation law or any similar law."

Hudson v. Hudson Mun. Contractors, Inc., 898 S.W.2d 187, 189-90 (Tenn. 1995). The purpose of this is to avoid a double reduction in the victim's damages, id., and the statutory right of subrogation may remain attached to any sums not offset. In this case, there would be no double reduction and thus nothing would prohibit the statutorily created subrogation lien for workers' compensation insurers such as CIGNA from attaching to uninsured motorist benefits paid out by Home. Any sum paid by Home would benefit CIGNA and violate the policy provision excluding coverage to benefit such an insurer. The court did not err in granting summary judgment on the claims for breach of contract.

Finally, since Home has no duty under either policy to pay Browns' claims, the court did not err in also dismissing counts two and three of the second amended complaint. In the absence of an underlying duty to pay the claims, there can be no bad faith and vexatious refusal to pay. Linda Brown's loss of consortium claim is derivative of her husband's claims and thus also fails. Tuggle v. Allright Parking Sys. Inc., 922 S.W.2d 105, 108 (Tenn. 1996).

## C.

For the reasons discussed, Home Insurance Company is entitled to summary judgment. The judgment of the district court is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.