# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 01-2496

————————

Western Forms, Incorporated,

                Appellant,

      v.

Michael W. Pickell,

                Appellee.

Appeal from the United States
District Court for the
Western District of Missouri.

————————

Submitted: January 14, 2002
Filed: October 25, 2002

————————

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

————————

HANSEN, Circuit Judge.

Western Forms, Incorporated (hereinafter "Western") is a Kansas City based manufacturer of aluminum form systems and accessories used for cast-in-place

———————————

[1] The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the author of this opinion.

[2] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

concrete construction. Michael Pickell joined Western in 1985, left for a short time, and rejoined the company as a sales representative in 1989. At the time he rejoined the company, Pickell executed two instruments: a Sales Representative Agreement (hereinafter "Agreement") and a Service Representative Contract (hereinafter "Contract"), which was attached to the Agreement as an addendum thereto.

The Agreement provided the terms and details of Pickell's employment as a sales representative, including, among other things, his compensation package, a definition of his sales territory, and his term of employment as a sales representative. It provided that "this Agreement shall terminate one (1) year after the date hereof; provided however, that Representative may extend the effectiveness of this Agreement for an additional year by giving written notice of such extension to the Company." (Add. at 84.) The Agreement also provided that the "Representative shall sign and comply with the terms and provisions of the Company's standard non-competitive covenant which is a part of this Agreement and is attached as an addendum hereto." (Add. at 85.) A merger clause in the Agreement provided that "[t]his Agreement INCLUDING ADDENDUM # 1, embodies the whole Agreement of the parties." (Add. at 85.) It is undisputed that the Agreement's references to an addendum are references to the Contract, which contained covenants preventing the "use or disclos[ure] . . .[of] any Confidential Information," (Add. at 76) and certain covenants not to compete "for a period of two (2) years from and after the voluntary or involuntary termination of such employment," (Add. at 77).

Pickell worked as a sales representative until 1991 when he was appointed Midwest Regional Manager. At that time, Pickell signed a new compensation agreement entitled "Regional Manager Compensation Program, Western Forms, Inc." (Appellant's Separate App. of Ex. at 84.) Immediately after his appointment as regional manager and then again in 1993, the company approached Pickell and requested that he sign a noncompete agreement. At one point, Pickell told Don Winter, then Western's Vice President of Sales and Marketing, that he would not sign

a noncompete agreement even if it cost him his job because he was fundamentally opposed to them.

Several years later, the company drafted a revised noncompete agreement. During an internal audit, the company discovered that Pickell had not signed the revised noncompete agreement and requested that he do so. Pickell refused to sign the noncompete agreement. In 1997, Pickell was appointed National Sales Manager. Jim Skelton, Western's Human Resources Director, approached Pickell after his appointment and requested that he sign a noncompete agreement, but, once again, Pickell refused to do so.

In January 2001, Pickell resigned from Western, and he and Winter, Western's former Vice President of Sales, went into business together, forming Great Plains Contractors Supply, LLC (hereinafter "Great Plains"). Great Plains distributes construction supplies, including Tuf-N-Lite products, in the Kansas City area. Tuf-N-Lite, like Western, manufactures aluminum form systems. Thus, some of the products that Great Plains distributes compete with Western's products.

Western filed a complaint against Pickell seeking both injunctive and monetary relief. Western alleges that Pickell breached the 1989 employment covenants and violated The Missouri Uniform Trade Secrets Act, Mo. Ann. Stat. §§ 417.450 et seq. (West 2001). After a preliminary injunction hearing, the district court requested supplemental briefing on the issue of whether the 1989 covenant expired before Pickell resigned in 2001. Pursuant to Federal Rule of Civil Procedure 65(a)(2), the district court consolidated the preliminary injunction hearing with the permanent injunction hearing. The district court[3] then denied all legal and equitable relief to the plaintiff. Western filed this appeal, and we affirm the judgment of the district court.

---

[3]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

3

All agree that Missouri law controls in this diversity action. "We review the district court's interpretation of Missouri law de novo." Bass v. Gen. Motors Corp., 150 F.3d 842, 846-47 (8th Cir. 1998). "[W]e are bound by the decisions of the Missouri Supreme Court. If the Missouri Supreme Court has not spoken on a particular issue, we may consider relevant state precedent, analogous decisions, considered dicta, ... and any other reliable data." Id. at 847 (internal quotation and citations omitted). We review the district court's construction and interpretation of the employment contracts at issue de novo. Brown v. Home Ins. Co., 176 F.3d 1102, 1105 (8th Cir. 1999). Whether a contract is ambiguous is also a question of law that we review do novo. Rosemann v. Roto-Die, Inc., 276 F.3d 393, 399 (8th Cir. 2002). After careful review of the record, the district court's findings of fact and conclusions of law, and the relevant case law, we conclude that the district court did not err.

In resolving the issue of whether Pickell violated the noncompete agreement, the district court concluded that the terms of the agreement were unambiguous and construed the contract as a matter of law. As evidenced by the merger clause and the reference in the Agreement to the Contract, the district court concluded that the Contract was ancillary to the Agreement and must be construed in harmony with it. The language in the Contract provided that the noncompete agreement was triggered at the termination of "such employment." We agree with the district court that "such employment" referred to the only employment relevant at the time the Contract was signed–employment as a Sales Representative pursuant to the Agreement and not to employment generally. This conclusion is bolstered by the fact that the Agreement provided that employment as a sales representative was employment for only a limited duration–one year with the potential to renew the Agreement for a second year. It was not a contract entered into to govern Western's employment relationship with Pickell into the indefinite future regardless of his position within the company. Thus, either at the end of the second year or at least at the time Western appointed Pickell Regional Sales Manager in 1991, the Agreement had expired. The expiration of the Agreement triggered the running of the noncompete provision of the Contract

4

which had been incorporated as an addendum to the Agreement. On the unique facts of this case, this conclusion leads to the albeit strange result that the covenant not to compete began to run and eventually expired while Pickell was still employed at Western, but this result is a direct consequence of poor drafting on Western's part. We construe this drafting error against Western. In addition, Western compounded its own drafting error when it allowed Pickell to remain with the company despite his continued refusal to sign a new noncompete agreement.

We also agree with the district court's disposition of Western's claims concerning Pickell's alleged breach of confidentiality and use of trade secrets. See Western Forms, Inc. v. Found. Forms & Supply, Inc., 824 F. Supp. 739, 742 (S.D. Ohio 1993) (denying injunctive relief to Western on grounds that its customer list and pricing information is not proprietary or secret information because it is readily available); Mo-Kan Cent. Recovery Co. v. Hedenkamp, 671 S.W.2d 396, 400 (Mo. Ct. App. 1984) (concluding that "bidding structure" was not protected information). In a Missouri case analogous to this, the court held that the kind of information Western seeks to protect is simply not protectable:

> [d]efendants have, of course, carried with them a considerable amount of helpful information respecting sales of industrial oils in the territories they covered. Through their knowledge of the market and personal contacts they may be able to capture substantially all of plaintiff's business. But the knowledge they will use for this purpose is nonetheless generally unprotectable. It is obvious that the identity of the customers with which the St. Louis office dealt is not a trade secret. The important ones were the companies in the area which had use for large quantities of industrial oils, known to anybody in the business. As to their individual requirements, such data is not common knowledge to the same extent. But it is still information obtainable without recourse to misappropriation from a former employer. There is no reason to doubt that most price information is similarly obtainable.

Metal Lubricants Co. v. Engineered Lubricants Co., 284 F. Supp. 483, 488 (E.D. Mo. 1968), aff'd, 411 F.2d 426, 428 (8th Cir. 1969) (noting that the Supreme Court of Missouri has set up strict standards of proof for misappropriation of trade secrets claims). "Although the above quotation is in specific reference to trade secrets, it is equally applicable to show that the information . . . was not confidential because that information was known or easily obtainable by others." Walter E. Zemitzsch, Inc. v. Harrison, 712 S.W.2d 418, 421 (Mo. Ct. App. 1986).

Finally, Western concedes that the district court's use of Federal Rule of Civil Procedure 65 would not deprive it of its jury trial right if the district court decided the issues as a matter of law. (Appellant's Br. at 55.) As we read the district court's order, this is exactly what it did. Because we can add nothing further to the district court's well-reasoned order, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.